Good morning, and may it please the Court and Counsel, my name is Tracy Staub. I'm from the Federal Defenders in Spokane, and I'm here on behalf of our client, Steve Abrahamson. When the difference, the sole difference between a misdemeanor assault and a felony assault is whether bodily injury is substantial, the questions before this Court are substantial in relation to what and substantial in relation to who. There is no question in this case that when Steve Abrahamson reached around in his car and whopped his 3-year-old son in the face, he committed misdemeanor battery. But in this case, he was convicted of felony assault based upon the government's argument to the jury that substantial should be applied subjectively as opposed to objectively. Now, in the briefs, we raise four issues. Two of them are relatively related. The first two are whether the evidence was sufficient to support the felony conviction. And the second one is whether the statute, which is assault causing substantial bodily injury to a person under the age of 16, as applied in this case, is void for vagueness. We also challenge the trial court's finding that the government's experts' methods for determining hearing loss were sufficiently reliable under evidence rule 702, and we raise a sentencing issue. Unless the Court requests otherwise, I'd like to start out with a constitutional issue, void for vagueness. At trial, the government presented evidence and argued to the jury that the term substantial is to be applied subjectively. In other words, were the injuries substantial to I.A.? Mr. Abrahamson set forth in his brief to this Court that if substantial is applied subjectively, then the statute, as applied, is void for vagueness. The government doesn't respond to the subjective versus objective argument that we set forth in our briefs. Now, in Gamow, and I'm not sure if I'm pronouncing that correctly, but it's G-A-M-M-O-H, Gamow v. City of La Habra, and this is a case cited in our brief, the Ninth Circuit sets forth some factors to consider when a penal statute relies upon subjective terms in order to define the offense. And the statute is not void for vagueness if the so long as the subjective terms are used in combination with other terms and do not define the prohibited conduct. In this case, as I mentioned earlier, the sole difference between a felony assault and a misdemeanor assault is the word substantial. And substantial in this case was applied subjectively. There are no other terms to help define substantial and assist the Court or the jurors in determining whether substantial means in relation to injuries in general or substantial in relation to this particular person. Usually I hear the void for vagueness argument as a due process argument in a different context. That is, does the person know what he's accused of doing was illegal? I don't know that's quite the case here, because whether it's a felony or misdemeanor, there's really no doubt that what the defendant did when he turned around and swatted the three-year-old was illegal. The consequence, it's sort of like there's a difference in severity because of the consequence, but that's really not something controlled by the offender. I mean, you can be charged of murder or attempted murder, and you may have tried real hard for attempted murder, but if you don't succeed, it's not going to be as severe as if you do succeed. If you kill somebody, then you're going to face the severest consequences. In this case, is there any doubt that he had reason to know, he had good reason to know that what he did was unlawful? He was probably not thinking in legal terms, but it's the turning around and swatting that's the illegal conduct. The consequence, the level of severity, that's really not something that he's gauging unless you're going to suggest to me, and I suspect you aren't, that he's decided to beat this kid up to the level of a misdemeanor, but he wasn't going to beat the kid up to a felony. I mean, that's not how people act. So I'm really not sure this vagueness problem is a due process problem. There's really no doubt that what he did was unlawful, is it? Well, and, Your Honor, gauging it from notice to the defendant is one way of gauging it, but another issue surrounding due process is whether or not the judge and the jury apply it in a consistent manner. And again, that raises the question here where the judge argues that substantial should be applied subjectively to a juror and talks about life experiences of each individual person. So is substantial applied according to the life experiences of each individual juror, or is it applied according to the life experiences of this child? Is it applied according to injuries in general? It's not only noticed to the defendant, but it's noticed to the judge and to the police officers as to how to consistently apply the statute. And I think that that does raise a due process issue. It's helpful, of course, to look at the term serious bodily injury, which is an aggravated form of assault. Serious, the definition of serious bodily injury also includes the term substantial. A bodily injury can be serious if it includes, if it involves a substantial risk of death. Now, I would suggest to the Court that if somebody ‑‑ if a victim comes in and says, boy, I thought I was going to die, that wouldn't be enough. There would have to be evidence, objective evidence to say that the risk of death was actual and was actually substantial in an objective sense. So when substantial is used under the definition of serious bodily injury, it is objectively applied as opposed to subjectively applied. Well, in that sense, we did have ‑‑ I mean, the 3‑year‑old didn't testify. We don't have the issue of somebody saying, well, it really hurt a whole lot. You have principally a doctor, Dr. Whipple, is that her name? Whipple, yes. Which made me think I was watching a commercial. Yes. Testifying and offering what is concededly a projection or a surmise based on what you're describing, the physical manifestation of the injury. Well, isn't that an objective description? It might leave it to the jury to decide whether that objective description is high enough on the scale to be deemed substantial. But isn't that an objective description? Well, I think what Dr. Whipple testified in this case is that the injury was substantial to this 3‑year‑old child. And I guess that leaves open the question if, you know, the injury were to, say, a 15‑year‑old child who was a motocross racer and had multiple injuries throughout his life, could defense bring in evidence that, hey, this injury really ‑‑ the same injury wasn't substantial to this particular victim because he's had much worse injuries, stuff like that. So the question is, if you look at this injury, the injury, the question is, do we look at this injury in relation to injuries in general, where it would be at the bottom end of the scale, or do we look at the injury in relation to this particular victim's life experiences? And if so, does that open up a whole can of worms? And I think that if we're going to ‑‑ I've got to assume that a juror or anybody would react differently, treats a 3‑year‑old child as something different from a, I forget, 18‑year‑old or 15, whatever example you use, but somebody materially different. I mean, children are more fragile and, in that sense, more vulnerable, and jurors probably would be inclined to say something that wasn't substantial for an 18‑year‑old would be substantial for a 3‑year‑old. Is something wrong with that? Well, what if the 15‑year‑old had never been injured before and got a bruise? Again, we're going back to, is it the life experiences of this particular person that defines the crime? So, you know, the Supreme Court ‑‑ As I understood it, Dr. Whipple said that there was hearing loss or there could be hearing loss. She also said that this whole situation caused bruising of the inner ear. That's correct. Well, that seems pretty objective to me, and I guess then it's up to the jury to suggest whether that's the substantial, because substantial bodily harm is defined as temporary but substantial disfigurement and temporary but substantial loss or impairment of a bodily member of organ. So I guess I'm trying to figure out, if I get the testimony in of the expert that they suggested, which I know you're going to try to get after that in a minute, I have a tough time suggesting that a jury who is the person of ordinary intelligence would understand or would not be able to make a decision as to this issue. Okay. I think ‑‑ I mean, putting it directly on point, I don't know that Gamow is a good ‑‑ and I say Gamow, but I'm from Idaho. But, I mean, I don't know that that's even a good case to read, because it's a First Amendment case. I'm looking at U.S. v. Fitzgerald, and I looked at what they said about these determinations, and I guess I'm still having a tough time with your argument. Okay. And I think I've articulated, and it may obviously be a disagreement philosophy, obviously we win in our disagreement. You have to play the cards you dealt. Exactly, Your Honor. I will move on. I've got ten minutes. I'm going to move on to the ER702 issue, and that issue is whether, and again, that's an abusive discretion standard, but whether the trial court abuses discretion by admitting the testimony of Dr. Whipple that IA's hearing was affected by the bruising. And again, we're challenging the methods which she used to come to that conclusion. I think a little bit of background may be helpful to this court. It's in the record, but it's not necessarily clear. When Dr. Whipple inspected IA the day after the injury, she wasn't necessarily concerned with whether or not IA had hearing loss. She could see that his ear was swollen, and she assumed that the swelling would go down in time, at some point. So she didn't really test for hearing loss at that point in time. It wasn't a big concern for her. And that's an objectively reasonable treatment. However, nine months later, she submitted a supplemental letter saying, oh, and by the way, his hearing was affected or impaired by this bruising, after the government had asked her to supplement the record or supplement her findings. So it wasn't until later that she came up with this finding that his hearing was impaired. But isn't that a weighed argument, then? Well. I love to give cross-examination, having been in your situation before, to some expert who had the chance to review all this stuff and didn't make all the tests that they had proper to make, and they'll say it's because it was too much swelling at the time, and then try to supplement their affidavit thereafter. But that's a weighed argument. That isn't. That's not an argument about whether it should have been admitted or not. No, and I agree, Your Honor. It's just a little bit of background information. But what we are challenging is her visual method of checking for hearing loss, because what she says is I visually checked the ear and determined he had hearing loss. And this visual method of checking hearing loss, there's no evidence in the record that this is a reliable method of checking hearing loss. That goes back to weight, doesn't it? No, because ER 702, Daubert, and Kimono-Tyre all say that the district court has to perform a gatekeeping function, that the methods used have to be reliable. That's what Daubert and Kimono-Tyre are all about. It's hard to say that an exam by a pediatrician is junk science. I mean, Daubert is meant to be a gatekeeping, but physicians doing customary exams, is there any authority, is there any case where we wind up excluding what an examining physician observes during the examination? Now off the top of my head, I apologize. No, I understand. The problem is that, yeah, Daubert applies to all experts, but some things are kind of right in the middle, and you don't think very hard about those issues at the time. Now it may be that she's conducting her examination and isn't thinking about what happens at a trial some months later, but that's what we're talking about. That's what you try to extract through cross-examination and persuasion. To say that you can't get up on the stand and offer up those observations, I guess I have to come back and say, is there any case that keeps an examining physician from testifying to that kind of thing? I wouldn't think so. Well, Your Honor, and again, just because she's qualified as an examining physician, and we don't doubt her qualifications, but in this case she can still speculate, and that's exactly what she's doing. She's speculating. Well, I looked into it. And she acknowledged it. I mean, she's not the 3-year-old, so she can't report the 3-year-old's perspective. She didn't do a hearing test as such, so she can't say I've got those results. But is there something wrong with saying, but this is the manifestation, and what I think happens under those circumstances based on my training is that the sound doesn't get through. But she doesn't say based upon my training. She just says based upon common sense that if the hearing, if the ear is closed up, you can't hear. Well, then maybe she doesn't need to be a physician. Maybe she's not even an expert under Daubert. I mean, it may well be that an observer, a precipient witness can say that. I mean, she was a precipient witness. Well, and later on, I think it was Dr. Brinkman, and I think that's correct, he was the ear, nose, and throat specialist, who came in and testified that, you know, even a minute opening in the ear will allow hearing in. So a visual observation is not a reliable method of checking for hearing. And, again. What in this record tells me what you just said? Other than your expert's testimony, what says that a pediatrician, upon examining a 3-year-old's ear and seeing the conditions that are there, has no way to suggest that someone does not have a loss? I mean, do I have any evidence from all of the history out there, all of the records, all of the situational testimony? Do I have anything to suggest that what she did and said is outside of the realm? Well, Your Honor, two things. Number one, we're not questioning her treatment. Didn't question her treatment either. It was fine. But number two, the burden is on the government. Well, I understand. But my worry is that here's this lady who comes in. She has all of the qualifications to say what she said. That's what the court found. And I haven't anybody questioning those qualifications. Not only that she has the qualifications, but that this is relevant and reliable. And now she makes these observations. Now we're at wait. Well, if she comes in and says, you know, I used this method. Do you have any evidence in this record to suggest that method is not reliable? There is. Well, there's the testimony of Dr. Brinkman at trial who testified that, you know, a minute opening in the ear will allow sufficient air. That's his idea of a good time. I understand that. And that is evidence in the thing. But, again, the flip side to that is there's no evidence to show that this method is reliable. Well, but here we have the judge making these decisions. We've got expert testimony. We've got abuse of discretion. Right. Standard. And he is making those determinations. And you want me, based on no evidence, to say he was wrong. Well, Your Honor, and I think when his finding is based on no evidence, that that is an abuse of discretion. And so there's just ñ there's nothing in the record to show that this is a reliable method of showing hearing. And I think that the trial court may have misunderstood the two-factor process that needs to be determined. Again, there was no question that she was qualified as a physician. And there's no question that we don't challenge her treatment of IA. But coming back in later and using a test that's never been shown to be reliable to speculate that his hearing may have been, especially when that is a ñ that is one of the big issues in this case, I think, Your Honor, that that was a mistake. And we would suggest it's abuse of discretion. But she did give another test, isn't that correct? Even after having this first exam, there was an exam later that she also had evidence to rely upon. She examined him a week later. And at that point, the swelling had subsided. There was no question of hearing loss. They weren't concerned with that at all. And his exam was relatively normal at that point in time. I don't think they ever did any other objective testing of his hearing at all. So I'm going to try and reserve the remainder of my butthole ñ or remainder of my time for rebuttal. Thank you, Your Honor. You may do so. And we'll hear from the government. Good morning. May it please the Court and counsel, my name is Stephanie Van Marder. I'm here ñ I'm an assistant with the United States Attorney's Office in the Eastern District of Washington. I would like to first address the defendant's argument relative to void for vagueness with respect to the term substantial. I think defense stood up here and argued specifically that because there was no specific definition of substantial, that makes this statute vague. I disagree. There is a definition. And that definition is it's substantial bodily injury if there's a temporary disfigurement or if there's a temporary loss of functioning of any bodily member or organ. And in this case, the evidence supported both. So to stand here and say that the statute is then vague, I think completely misrepresents the fact that there is a definition. And the standard before the Court, as has already been noted, is that the Court must look to the common understanding of the terms of the statute. And the standard is as long as the defendant has fair notice of an offense, if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question. I think that there is no issue in this case that the defendant would have had to have known his conduct was unlawful. And the United States respectfully disagrees it was not just a swatting. It was a beating upside the side of his 3-year-old's face that caused substantial swelling and bruising to the side of his face to the point where his inner ear canal was swollen shut. So I think any reasonable person of any form of intelligence would understand that that is illegal conduct. And the defense argues that he's not placed on notice that there's any difference between misconduct as far as a misdemeanor versus a felony. And again, I think that there is absolutely notice, and I don't know that it's required that he know the differing level of the consequence, as is pointed out by this Court. I think he was put on notice that as long as there was a temporary disfigurement or a temporary loss of the function of any bodily member, that we're talking about a substantial bodily injury. I don't think anywhere it's required that the term substantial be specifically defined any more than it already was. So I do not believe that this, and I'm looking to the common understanding and applying the facts, this particular statute is not vague. And I think the Fitzgerald case, and that's the case to which I was quoting from, makes that relatively clear. And even in Fitzgerald, they weren't in a position that this Court is in, in that there wasn't the same type of definition for serious bodily injury as there is for substantial. So I do not think this Court can conclude that the statute was vague. As to the issue of the admissibility of the expert testimony, I think that what we have here is a circumstance where you have a pediatrician, an examining pediatrician of the child at the time of the injury. This pediatrician is more than qualified. The foundation, the Daubert hearing, the same foundation that was presented at trial, as to her training, the obtaining of her medical license, the years of experience she had as a pediatrician, and as well as the steps that she took not only as a percipient factual witness, but also as an expert pediatrician. And I think that the Court adequately and completely performed its gatekeeping function in looking to what it was supposed to determine, and that is whether the testimony was relevant and reliable. And in this particular case, relevant, reliable expert testimony, relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And if it is reliable, if it has a reliable basis in the knowledge and experience of the relevant discipline. In this particular case, what defense counsel is arguing is because Dr. Whipple could not perform a hearing test at the time of initial examination. Her methodology was unreliable. And I do not think that that's what the precedence of cumulative stands for. I don't think you have to have a specific hearing test at the time for this qualified pediatrician to offer an opinion. And I think in this case, there is some common sense factors. If the ear canal is swollen shut, you can't hear from it. She examined this child. She's a trained pediatrician. She should be allowed to offer that opinion as well as the extent of the injury. There's nothing within case law that precludes the admissibility of that expert testimony, and it's completely appropriate. Absent a specific hearing test does not negate the ability for this expert to provide her opinion. And that quote was from the Sandoval case from this Court. Your Honor, counsel did not specifically get to the areas of sufficiency of evidence as well as the sentencing issue. I think sufficiency of evidence cointerrelates with the void for vagueness argument in the sense that she's alleging there was not sufficient evidence to support a finding of substantial bodily injury, or in other words, there was not sufficient evidence to conclude the felony assault in this case. Again, the standard before the Court is whether a rational trier of fact could have found the essential elements of the offense. In this particular case, I think that the totality of the injury in this particular circumstance could only conclude a felony assault. This was not a simple assault. The bruising and the extent of swelling to this child's face, the fact that he did suffer some temporary hearing loss because his ear canal was swollen shut all the time. I don't think that there's any way you can conclude this as a misdemeanor assault based upon the statutory definition of what constitutes substantial injury. I don't think that you could conclude the opposite based upon the statute. Well, I could imagine, I mean, one of the perhaps anomalies of the way the statute  leads to the trier of fact, making a decision as to what amounts to substantial or, as in Fitzgerald, serious, is that different people have different thresholds. And so if the jury had decided, well, it's bodily injury but not substantial, leaving aside the fact you can't appeal that to us, if you could, I don't know that we could call that not supported by the evidence or unreasonable under the circumstances either. The statute appears to hand over to the jury the responsibility of making that assessment. And as long as it's not so far off the mark that the trial judge or the appellate court would say that, well, the evidence doesn't stack up high enough to produce enough to support that result, then that's what's happened. We've handed over to the jury as the trier of fact that decision. And I would agree. And I think that raises a good point I meant to address earlier. And the United States has never taken the position that this was all a subjective standard. We did produce objective testimony as to what constituted substantial in this case. And I think once we produce that testimony, this Court is corrected, then it is a jury determination. They are the fact finder. They apply the facts as we provided to them and to the definitions and determine whether it was substantial. And I think the Court is correct. Obviously, if they had found a simple assault, I'm not sure that I could raise that question to the province of the jury or their fact-finding ability. I think my addressing that issue in this particular case is that the facts as presented to the jury and the definitions as provided to them clearly supported the conclusion that this was a substantial bodily injury contrary to the defendant's assertions and their brief. So I think that as far as the sufficiency of the evidence standard, there's nothing that would lead this Court to be concerned or to conclude that that jury could not have reached the verdict that they did in this case. The only issue left that has not been addressed is the acceptance of responsibility. I think the standard in that particular review is pretty clear in whether the district court committed clear error in denying the defendant acceptance of responsibility. I think that this is a particular case where obviously this Court should give great deference to the district court judge who sat through the trial and also sat through the sentencing. I do not think that it was error for the Court to conclude that the defendant had in fact denied pretty much an essential element of the offense, and that offense was the degree of injury. And it's not about penalizing him for going to trial or challenging the legal sufficiency of substantial bodily injury. But as we argued and as the district court noted at sentencing, to stand up and say, yes, I assaulted my son, but I just didn't hurt him that bad, that's not acceptance of responsibility. And it is not clear error for the Court to have denied a reduction based on acceptance of responsibility. I have nothing further unless the Court has any questions. Roberts. Thank you for your argument. And we'll hear from Ms. Staub. The government suggests that there is a definition, a clear definition for substantial bodily injury, and then gives this Court the definition of bodily injury. Bodily injury is defined, and it's set forth in the statute 18 U.S.C. 113. And or, I'm sorry, 18 U.S.C. 1365. And bodily injury includes all the things that the government just talked about, a cut, abrasion, bruise, burn, or disfigurement. It also includes an impairment of the function of a bodily member. So bodily injury includes those things. The question is whether it's substantial bodily injury. And that substantial, that one word, substantial, is the difference between a felony and assault. So that word substantial is not defined within the statutes. Well, there's a definition for the term substantial bodily injury. There is a term for substantial bodily injury, yes. But it reuses the word substantial. Yes. I mean, I guess what it does is indicate that the condition doesn't have to be permanent. No. Temporary but substantial. So the question is, well, what does substantial mean? Again, turning quickly to the expert issue, our point is not that because she couldn't test the hearing loss, her methods were unreliable. First, the doctor, Dr. Whipple, acknowledged that she could have tested hearing in this case without harming the child. She could have conducted a whisper test or a finger rub test at that point in time and applied at least some objective testing to determine whether his hearing was impaired. Again, she could have also said, I've used this method in the past. It has a very low error rate. Generally speaking, it's accepted by the medical community. But she said none of these things. So it's not just the fact that she didn't test it on this particular occasion that we challenge the reliability of the method. It's the fact that there's no evidence here that this method is reliable. And I think I'm out of time, but for the reasons that we've raised in our brief, we would ask that the conviction be dismissed with prejudice if the evidence is insufficient, and if not, for a new trial. Thank you, Your Honor. We thank you. We thank both counsel for the argument. The case just argued is submitted. That concludes our calendar for this morning. So we are adjourned.
judges: Clifton, Smith, Sandoval